F I L E D
CLERK, U.S. DISTRICT COURT
1/7/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___VM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

November 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:22-cr-00008-MCS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 641: Theft of Government Property in Excess of $1,000; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| NECHELLE DENISE KING, aka "Nechelle Dairy," | |
| Defendant. | |

The Grand Jury charges:

COUNTS ONE THROUGH THREE

[18 U.S.C. § 1343]

A. INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. The United States Postal Service ("USPS"), a federal agency, had authority to negotiate and sell money orders to customers at USPS post offices.

2. Defendant NECHELLE DENISE KING, also known as "Nechelle Dairy," was a USPS retail clerk at the USPS post office in Bellflower, California. As part of her job duties, defendant KING processed in-person money order transactions.

3. According to USPS training and policies:

    a. When a retail clerk at the USPS post office in Bellflower, California sold a money order to a customer, the retail clerk would enter the amount of the money order into the Retail Systems Software ("RSS"), the USPS's point-of-sale system, and print the money order. The RSS would credit the retail clerk's cash drawer in the amount of the money order and the service charge. The RSS would also store, among other information, the amount of the money order, information about the retail clerk who sold the money order, and the date and time of the sale.

    b. In limited circumstances, such as when a customer presented a damaged or mutilated money order at a USPS post office, a retail clerk could issue a replacement money order without charging the customer a replacement fee. When issuing a replacement money order, the retail clerk would fill out an electronic form called the PS Form 6401 with the payee's name and address and have the customer sign the PS Form 6401 to acknowledge the replacement. The RSS would then register the original money order as having paid for the replacement money order and store the payee information.

    c. A retail clerk could also void a money order by marking it "Spoiled." When voiding a money order, the retail clerk's cash drawer would open so that the retail clerk could return the amount of the money order to the customer, and the RSS would reduce the amount of cash the retail clerk was required to turn in at the end of their shift by the value of the voided money order.

    d. At the end of a retail clerk's shift, the retail clerk was required to report and input into the RSS any overages or shortages of cash in their cash drawer. A supervisor then collected

any records of overages or shortages and reported them in the daily bank deposit collected at the end of the day.

4.   For money orders sold, the RSS data were sent electronically, via a wire transmission, to Retail Sales Audit Software in Eagan, Minnesota.

5.   When a money order was negotiated or cashed at a USPS post office, the physical money order was delivered to a local contracted bank, which would scan and send the image of the money order via wire to the Federal Reserve Bank in Atlanta, Georgia.  A Wells Fargo Bank branch in Los Angeles, California was the local contracted bank that handled negotiated and cashed money orders for the USPS post office in Bellflower, California.

B.   THE SCHEME TO DEFRAUD

6.   Beginning no later than on or about March 1, 2016, and continuing until at least on or about March 17, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant KING, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the USPS and the United States as to material matters, and to obtain money from the USPS and the United States by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

7.   The scheme to defraud operated, in substance, as follows:

   a.   Defendant KING would issue a money order and would then engage in various combinations of the following actions that defendant KING knew would cause an overage in her cash drawer or an additional money order for which no cash was received: replacing the original money order, replacing the replacement money order, voiding

1  the original money order, and voiding the replacement money order.
2  Defendant KING, knowing that she was not entitled to the cash and
3  money order, would take cash from her cash drawer in the amount of
4  the overage for her own personal use or would cash the money order
5  for her own personal use.
6           b.   When issuing replacement money orders where no
7  customer was present, defendant KING would fill out and sign a PS
8  Form 6401 with customer and payee information that she knew to be
9  false.
10          c.   For example, defendant KING would issue a money order
11 and then issue a replacement money order for the original money
12 order, causing the RSS to transfer the amount of the money order from
13 the original money order to the replacement money order.  Defendant
14 KING would then void the original money order, knowing that she would
15 cause the RSS to incorrectly reduce the amount of money she would be
16 responsible for returning to the RSS at the end of a work shift.
17 Defendant KING would then take cash from her cash drawer in the
18 amount of the original money order or she would exchange the
19 replacement money order for cash for her own personal use, knowing
20 that she was not entitled to the cash or money order.
21 C.   THE USE OF THE WIRES
22      8.   On or about the following dates, in Los Angeles County,
23 within the Central District of California, defendant KING, for the
24 purpose of executing the above-described scheme to defraud, caused
25 the transmission of the following items by means of wire
26 communication in interstate commerce from the State of California to
27 the State of Georgia:
28

4

| Count | Date | Item |
|---|---|---|
| ONE | February 23, 2017 | Money Order with serial number 24287136671 with a value of $1,000 |
| TWO | March 2, 2017 | Money Order with serial number 24287158170 with a value of $1,000 |
| THREE | March 2, 2017 | Money Order with serial number 24287158203 with a value of $1,000 |

COUNTS FOUR THROUGH SIX

[18 U.S.C. § 641]

On or about the dates set forth below, in Los Angeles County, within the Central District of California, defendant NECHELLE DENISE KING, also known as "Nechelle Dairy," knowingly and willfully embezzled, stole, purloined, and converted to her own use money and property of the United States Postal Service (the "USPS"), a department and agency of the United States, having a value in the aggregate exceeding $1,000, namely, money orders in the following amounts, to which defendant KING knew she was not entitled, with the intent to deprive the USPS of the use and benefit of that money and property:

| Count | Date | Money Order Number | Amount |
|---|---|---|---|
| FOUR | February 23, 2017 | 24287136671 | $1,000 |
| FIVE | March 2, 2017 | 24287158170 | $1,000 |
| SIX | March 2, 2017 | 24287158203 | $1,000 |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Six of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                             A TRUE BILL

                                                 /S/
                                             Foreperson

TRACY L. WILKISON
United States Attorney

*[signature]*

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

JOSHUA O. MAUSNER
Assistant United States Attorney
Deputy Chief, General Crimes Section

KYLE W. KAHAN
Special Assistant United States Attorney
General Crimes Section